**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| BARBARA MARSHALL, et al., § § *Appellants,* § § v. § § BILL GURLEY, et al., § § *Appellees*. § | § § § CIVIL ACTION No. 4:17-cv-405 § § JUDGE RON CLARK § § § |

## MEMORANDUM OPINION ON APPEAL FROM BANKRUPTCY COURT

Appellants Barbara Marshall, LP; North Ponderosa, LLC; and David McKinnon ("McKinnon") (collectively, "Appellants") appeal the bankruptcy court's grant of a motion to vacate filed by Bill Gurley ("Gurley") and Stanley W. Wright ("Wright") (collectively, "Movants"). Mark W. Weisbart ("Appellee"), the chapter 7 trustee, was substituted for Movants as Appellee in this appeal. Donald Cardwell ("Cardwell"), the debtor, also filed an Appellee brief. The court finds no error in the bankruptcy court's rulings, and the judgment of the bankruptcy court is therefore affirmed.

## I.   BACKGROUND

### A.   Factual Background and Procedural History

On October 2, 2009, Cardwell filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code. The bankruptcy court appointed Christopher Moser ("Moser") as the chapter 7 trustee.

Cardwell's bankruptcy schedules, which were amended several times, disclosed that he was living on 118 acres in Melissa Texas. Cardwell indicated that 24 acres were his exempt

homestead and the remaining 94 acres ("Marshall Property") were encumbered by a $600,000 lien in favor of "Barbara Marshall." On January 19, 2010, Barbara Marshall, LP, filed a proof of claim for $600,000, attaching a note and deed of trust dated October 22, 2008. Moser investigated the claim by reviewing the documents, deposing Cardwell, visiting the property, and conducting a Bankruptcy Rule 2004 examination of Barbara Marshall that was also attended by McKinnon, her financial advisor.

Prior to the petition date, Gurley obtained a $370,830.84 judgment against Cardwell for breach of fiduciary duty in connection with his management of their jointly-owned business in Cause No. DC-06-03299 in the 134th Judicial District of Dallas County, Texas.[1] On November 3, 2010, the bankruptcy court determined that Gurley's state court judgment against Cardwell was exempt from discharge pursuant to 11 U.S.C. 523(a)(2)(A) and (a)(4). *Cardwell v. Gurley*, No. 4-10-CV-706, 2011 WL 6338813 (E.D. Tex. Dec. 19, 2011), *aff'd sub nom. In re Cardwell*, 487 F. App'x 183 (5th Cir. 2012).

Shortly thereafter, on November 18, 2010, McKinnon formed North Ponderosa, LLC, and began negotiating the purchase of the Marshall Property from the bankruptcy estate. On February 17, 2011, Moser filed a motion to sell the Marshall Property to North Ponderosa, LLC, for $25,000 plus the assumption of the $600,000 lien. No objection was filed, and on April 12, 2011, the bankruptcy court entered the order authorizing the sale ("Sale Order"). The Sale Order is the subject of the motion to vacate in this appeal.

Cardwell's bankruptcy case was closed and Moser was discharged as the chapter 7 trustee on October 25, 2013. Gurley began post-judgment collection efforts against Cardwell in state court, filing an application for turnover relief pursuant to the Texas Turnover Statute, TEX. CIV.

---

[1] The state court judgment was recently affirmed by a Texas Court of Appeals. *Cardwell v. Gurley*, No. 05-09-01068-CV, 2018 WL 3454800 (Tex. App.—Dallas, July 18, 2018, no pet. h.).

2

PRAC. & REM. CODE §§ 31.001-31.010. On December 27, 2013, Wright was appointed as receiver for Cardwell's assets. During a post-judgment deposition, Cardwell revealed that he was leasing the Marshall Property for $10 per year pursuant to a lease agreement ("Grazing Lease") signed on February 27, 2012. In light of this discovery, Movants filed claims against Appellants, Cardwell, William H. Gibson, D. Scott McKinnon, Barbara F. Marshall, and Marcia Stallings (collectively, "TUFTA defendants") seeking relief pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE §§ 24.001-24.013, in Cause No. DC-15-13561 in the 134th Judicial District of Dallas County, Texas ("TUFTA claims").

On September 25, 2014, the TUFTA defendants filed a motion with the bankruptcy court to reopen Cardwell's case to determine whether the bankruptcy estate had an interest in the TUFTA case. After a hearing on October 21, 2014, attended by the TUFTA defendants, Movants, and Moser, the court reopened the bankruptcy case and appointed Linda Payne ("Payne") as the chapter 7 trustee. On November 11, 2014, Movants filed a motion for relief from stay to proceed with the TUFTA claims. On November 19, 2014, the TUFTA defendants objected, arguing that the TUFTA claims were an impermissible collateral attack on the Sale Order and the claims should be litigated in the bankruptcy court. After a hearing on December 16, 2017, the bankruptcy court allowed Movants to proceed with the TUFTA claims and directed them to deposit any recovery in the registry of the bankruptcy court pending further order regarding distribution. The bankruptcy case was closed again and Payne was discharged as chapter 7 trustee on May 28, 2015.

Following a bench trial conducted on October 1, 2, and 5, 2015, the state court entered judgment in favor of Movants on December 2, 2015, and memorialized its findings in the Second Amended Findings of Fact and Conclusions of Law ("FOFCOL") issued on June 4, 2016. [2]

---

[2] The TUFTA judgment is currently pending on appeal before a Texas Court of Appeals as No. 05-16-00246-CV.

3

On May 4, 2016, Movants filed a motion with the bankruptcy court to reopen Cardwell's bankruptcy case for the second time to administer the Marshall Property for the benefit of the estate's creditors, vacate the Sale Order, and clarify that proceeds from a sale of the Marshall Property would be property of the estate. Despite objections from Appellants and Cardwell, the bankruptcy court held a hearing on June 27, 2016, and reopened the bankruptcy case on July 7, 2016, for the purpose of determining whether there was fraud on the bankruptcy court, and if so, to administer the Marshall Property as an asset of the bankruptcy estate.

On August 5, 2016, Movants filed their motion to vacate, requesting that the bankruptcy court vacate the Sale Order for fraud on the court pursuant to Federal Rule of Civil Procedure 60(d)(3). The parties agreed to bifurcate the procedural issues and the substantive issues. After a hearing regarding the procedural issues on November 17, 2016, the bankruptcy court issued the Order on Bifurcated Issues Related to Motion to Vacate the Order Granting Trustee's Motion for Authority to Sell Property of the Estate and to Pay Certain Taxes ("First Order") on November 22, 2016. In the First Order, the bankruptcy court concluded that (1) Movants were authorized to pursue the relief sought in their motion to vacate; (2) Movants were not required to file an adversary proceeding pursuant to Bankruptcy Rule 7001, and (3) Appellants were collaterally estopped from relitigating FOFCOL ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 20, 22, 23, 25, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46 (excluding the finding of injustice), 47, 48, and 49 in connection with the motion to vacate.[3] The parties subsequently filed cross motions for summary judgment. On May 25, 2017, after a hearing, the court issued the Order Regarding Motions for Summary Judgment ("Second Order") denying

---

[3] On January 11, 2017, Appellants appealed the First Order, which this court determined was interlocutory and declined to consider pursuant to 28 U.S.C. §§ 158(a)(3), 1292(b). Order Granting Motion to Dismiss, *Barbara Marshall, LP v. Gurley*, No. 4:17-cv-24 (E.D. Tex. April 11, 2017), ECF No. 24.

Appellants' motion for summary judgment, granting Movants' motion for summary judgment, and vacating the Sale Order. On June 1, 2017, the bankruptcy court appointed Appellee as the third chapter 7 trustee for Cardwell's estate. Appellants filed the instant appeal on June 8, 2017. On August 24, 2017, this court allowed Appellee to substitute for Movants as appellee in this appeal.

**B.     Preliminary Matters**

Appellee moved to strike Cardwell's appellee brief on the grounds that Cardwell was not a party to the contested matters underlying the orders on appeal and was not the subject of the orders on appeal. Although Cardwell purports to be an appellee, he merely echoes Appellants' arguments to reverse the bankruptcy court. Thus, the court will treat Cardwell as an appellant. Here, the record does not show that Cardwell ever filed a notice of appeal after the bankruptcy court entered the orders on appeal. *See* FED. R. APP. P. 4(a)(3) (requiring notice of appeal to be filed within 14 days after the date that the first party has filed a notice of appeal when multiple parties are involved in an appeal); FED. R. BANKR. P. 8002(a)(3). Each appellant must satisfy the notice of appeal requirements. *See Funk v. Stryker Corp.*, 631 F.3d 777, 781 (5th Cir. 2011) (citing *Bowles v. Russell*, 551 U.S. 205, 214 (2008)); *see also Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988). Furthermore, Cardwell lacks standing to appeal the order. *See In re Mandel*, 641 F. App'x 400, 402-03 (5th Cir. 2016) (noting that chapter 7 debtors rarely have a sufficient interest in how the bankruptcy court distributes assets of the estate). Accordingly, Appellee's motion to strike Cardwell's brief is granted.

## II.     ISSUES PRESENTED

Appellants raise the following issues on appeal:

(1) whether Movants, as creditors, had standing to bring the motion to vacate the Sale Order without the appointment and joinder of the chapter 7 trustee;

5

(2) whether a contested motion, rather than an adversary proceeding, was the appropriate procedural vehicle to seek an order to vacate the Sale Order;

(3) whether the bankruptcy court erred in concluding that Appellants were collaterally estopped from relitigating certain issues determined by the state court and memorialized in the FOFCOL; and

(4) whether the bankruptcy court properly granted Movants' motion for summary judgment to vacate the Sale Order.

## III.  STANDARD OF REVIEW

District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees," and, "with leave of the court, from other interlocutory orders and decrees" of bankruptcy judges. 28 U.S.C. § 158(a). An appeal from a bankruptcy court to the district court is taken in the same manner as appeals in civil proceedings from district courts to the courts of appeal. *Id*. § 158(b)(2); *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103-04 (5th Cir. 1991). The district court accepts the bankruptcy court's findings of fact unless clearly erroneous and examines the bankruptcy court's conclusions of law *de novo*. *First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 293-94 (5th Cir. 2013). Mixed questions of fact and law are reviewed *de novo*. *Id*. at 294. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been committed. *Id*. at 293-94. The bankruptcy court's discretionary decisions are reviewed for an abuse of discretion. *In re Delta Produce, L.P.*, 845 F.3d 609, 623 (5th Cir. 2016). "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard . . . or (2) rests it decision on findings of fact that are clearly erroneous." *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005).

The bankruptcy court's application of collateral estoppel is a question of law that the district court reviews *de novo*. *Wills v. Arizon Structures Worldwide, L.L.C.*, 824 F.3d 541, 545 (5th Cir. 2016). However, the bankruptcy court's application of offensive collateral estoppel is reviewed for an abuse of discretion. *Bradberry v. Jefferson Cty.*, 732 F.3d 540, 549 (5th Cir. 2013). The bankruptcy court's grant of summary judgment is reviewed *de novo*. *Williams v. Placid Oil Co. (In re Placid Oil Co.)*, 753 F.3d 151, 154 (5th Cir. 2014). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056.

## IV. ANALYSIS

**A. The bankruptcy court did not err in concluding that Movants had authority to seek relief from the Sale Order pursuant to Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60(d)(3).**

Appellants argue that Movants lacked standing to pursue the motion to vacate to set aside the sale order because the sale order was not a judgment to which Rule 60(d)(3) applied, only a party or its representative to a judgment have standing to seek relief under Rule 60(d)(3), and the chapter 7 trustee was a necessary party in the state court action and bankruptcy proceedings because any resulting recovery belongs to the estate, which is under the trustee's exclusive control.

Rule 60(d)(3) allows a court to "set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d)(3); *see* FED. R. BANKR. P. 9024 (applying Federal Rule of Civil Procedure 60 to actions involving relief from a judgment or order). "Judgment" is defined as "any appealable order." FED. R. BANKR. P. 9001(7); *accord* FED. R. CIV. P. 54(a). Thus, the Sale Order was a "judgment" to which Rule 60(d)(3) applied.

Next, in contrast to Rule 60(b), which provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding," Rule

60(d)(3) only states, "This rule does not limit a court's power to . . . set aside a judgment for fraud on the court." FED. R. CIV. P. 60(b), (d)(3); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (recognizing a federal court's inherent power to vacate its own judgment upon proof that a fraud has been perpetrated upon the court). Indeed, courts have recognized that nonparties may seek relief pursuant to Rule 60 when the nonparty is in some form of privity or when the nonparty's interests are directly or strongly affected by the judgment. *See Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 940 (6th Cir. 2013) (collecting cases); *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir. 1994) ("[A] nonparty may seek relief from a judgment procured by fraud if the nonparty's interests are directly affected." (citing *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1521 (11th Cir. 1987)). The fact that Movants were not named as a party or its legal representative in Moser's motion to sell the Marshall Property or the Sale Order does not preclude them from seeking relief pursuant to Rule 60(d)(3).

Finally, to support the proposition that the chapter 7 trustee was a necessary party to the TUFTA claims and subsequent bankruptcy proceedings, Appellants rely on bankruptcy cases involving trustees in active bankruptcy cases with assets to administer. *Jones v. Holland (In re Holland)*, No. 12-00496, 2013 WL 2190164, at *3 (Bankr. D.D.C. May 21, 2013) (stating that chapter 7 trustee was a necessary party to a proceeding to compel conveyance of property belonging to the estate); *In re Nachtweih*, No. 99-47435-293, 2006 WL 4446479, at *2 (Bankr. E.D. Mo. Sept. 5, 2006) (noting that the bankruptcy court had the power to enjoin state court adjudication of a suit that will threaten the integrity of the bankruptcy estate by affecting assets of the estate).

The bankruptcy code provides, "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C.

§ 350(b). "A trustee shall not be appointed . . . unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case." FED. R. BANKR. P. 5010; *see also* FED. R. CIV. P. 19(a)(1) (defining a required party as one that must be joined if "in that person's absence, the court cannot accord complete relief among existing parties," or "disposing of the action in the person's absence may . . . impede the person's ability to protect the interest; or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations"). The bankruptcy court did not abuse its discretion in determining that Movants could adequately represent the estate's interests in litigating the TUFTA claims and that a chapter 7 trustee was not necessary under Bankruptcy Rule 5010. Moreover, the bankruptcy court ordered that any recovery on the TUFTA claims would be deposited in the registry of the bankruptcy court pending further order. Therefore, the bankruptcy court did not err in finding that Movants had standing to pursue the TUFTA claims in state court and to file the motion to vacate without the joinder of a chapter 7 trustee.

**B.      The bankruptcy court did not err in concluding that Movants could seek an order to vacate the Sale Order without an adversary proceeding.**

Appellants contend that a contested motion was insufficient to satisfy due process requirements because Movants ultimately sought the type of relief that fell within the categories listed as adversary proceedings. FED. R. BANKR. P. 7001 (stating that adversary proceedings are proceedings to "recover money or property," "determine the validity, priority, or extent of a lien or other interest in property," "obtain approval . . . for the sale of both the interest of the estate and of a co-owner in property," and "obtain a declaratory judgment relating to any of the foregoing."). Appellants further point out that the motion to vacate failed to address the process by which the Marshall Property would become an asset of the estate or the treatment of the $600,000 lien held by Barbara Marshall, LP, that remains on the Marshall Property.

9

Here, an adversary proceeding was not mandatory because Movants only sought to set aside the Sale Order. Movants did not seek to recover property, determine the validity of the lien, obtain approval to sell property of the estate, or obtain a related declaratory judgment. *See* FED. R. BANKR. P. 7001(1)-(3), (9). Vacating the Sale Order was merely the first of many steps that would be undertaken by the chapter 7 trustee and that might require an adversary proceeding. Given that the Fifth Circuit has had the opportunity but has not held that relief pursuant to Rule 60(d)(3) cannot be brought by motion, the bankruptcy court did not abuse its discretion by concluding that an adversary proceeding was not mandatory. *See In re BNP Petroleum Corp.*, 642 F. App'x 429 (5th Cir. 2016).

**C.    The bankruptcy court did not err in concluding that Appellants were collaterally estopped from relitigating certain issues set forth in the state court's FOFCOL.**

Movants argued that Appellants were collaterally estopped from relitigating factual issues determined by the state court regarding Cardwell and Appellants' conduct that the state court found constituted actual and constructive fraudulent transfers under TUFTA.

The state court found that prior to the filing of the bankruptcy petition, Cardwell and Appellants engaged in an equity stripping scheme in which Cardwell divided his original 118-acre property into his 24-acre homestead tract and the 94-acre Marshall Property and granted a fraudulent $600,000 lien that created the appearance of negative equity in the Marshall Property.

The state court also found that after Gurley's judgment was determined to be exempt from discharge, Appellants formed North Ponderosa, LLC, to purchase the Marshall Property and shield it from creditors. As a result of the pre-petition equity stripping scheme, the appearance of negative equity in the Marshall Property caused Moser to file the motion to sell, and persuaded the bankruptcy court to authorize the sale of, the Marshall Property for only $25,000 subject to assumption of a fraudulent $600,000 lien.

The bankruptcy court determined that 44 of the state court's 55 findings were entitled to preclusive effect in connection with the motion to vacate under review in this case. However, the bankruptcy court concluded that collateral estoppel did not apply to the state court's findings that Cardwell and Appellants committed fraud on the bankruptcy court and specifically excluded those findings of the State court from the list that were granted preclusive effect in the bankruptcy court.

Appellants present several arguments to this court. They set up a straw man by arguing that the bankruptcy court erred in granting preclusive effect to the state court's conclusions that they had committed fraud on the bankruptcy court. But, as noted, the bankruptcy court specifically reserved the issue of fraud on the bankruptcy for itself. That argument is not on point.

Appellants additionally object to certain findings by the state court on the grounds that they were not supported by the evidence. But that argument is simply a request to reweigh all the evidence that was before the state court and to make different findings. If those findings are entitled to preclusive effect then, by definition, Appellants are precluded from asking another court to reweigh the evidence. Appellants also argue that the findings of the state court were barred by the res judicata effect of the Sale Order. But the Sale Order has been vacated, which is what is being appealed in this case. It is circular to say the Sale Order cannot be vacated because, by its own existence, it bars the court from determining that it resulted from fraud on the bankruptcy court.

Appellants do present some arguments that are phrased in terms of the legal requirements for establishing fraud on the court. They argue that that the findings of fact concerning their actions that the state judge determined constituted a violation of TUFTA and fraud on the bankruptcy court were not entitled to preclusive effect because they were not actually litigated, properly pleaded, or

an ultimate issue in the state court proceeding, which also did not involve the same parties. This court will address these arguments in turn below.

Collateral estoppel, or issue preclusion, prevents parties from relitigating the same issues conclusively determined between them in a previous action and applies equally to findings of fact and conclusions of law. *Arizona v. California*, 530 U.S. 392, 414-15 (2000); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 572 (5th Cir. 2005). The preclusive effect of a state court judgment under collateral estoppel is a function of the full faith and credit statute. *In re Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996), *see* 28 U.S.C. § 1738. When deciding whether a state court judgment has a preclusive effect in federal court, the court looks to the law of the state that rendered the judgment. *In re Gober*, 100 F.3d. at 1201.

Under Texas law, the party seeking to assert collateral estoppel must establish: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994); *Hill v. Tx-An Anesthesia Mgmt.*, LLP, 443 S.W.3d 416, 423 (Tex. App.—Dallas 2014, no pet.); *see Great Am. Ins. Co. v. Hamel*, 525 S.W.3d 655, 669 n.10 (Tex. 2017) ("prior adjudication of an issue will be given estoppel effect . . . if it was adequately deliberated and firm." (quoting *Mower v. Boyer*, 811 S.W.2d 560, 562 (Tex. 1991)). The issues decided in the first action must be identical to the issues in the pending action. *Texas Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *BP Auto. LP v. RML Waxahachie Dodge, LLC*, 517 S.W.3d 186, 200 (Tex. App.—Texarkana 2017, no pet.). In addition, "a judgment is final for the purposes of issue and claim preclusion 'despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo.'" *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) (quoting

RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. f (1982)). The requirements for collateral estoppel were satisfied in this case.

First, an issue has been "fully and fairly litigated" or "actually litigated" if it was raised, by the pleadings or otherwise, submitted for determination, and determined by the fact finder. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (1982)); *Tenet Health Sys. Hosps. Dallas, Inc. v. N. Tex. Hosp. Physicians Grp., P.A.*, 438 S.W.3d 190, 203 (Tex. App.—Dallas 2014, no pet.). These FOFCOL were determined by the fact finder, here, the state court, after a three-day bench trial on whether Appellants violated TUFTA, TEX. BUS. & COM. CODE §§ 24.005(a), 24.006(a), 24.006(b). Accordingly, the FOFCOL at issue were fully and fairly litigated in state court.

Second, an issue was essential to the judgment, *i.e.*, an "ultimate issue," when it was a factual determination that was necessary to form the basis of the judgment. *Tarter v. Metro. Sav. & Loan Ass'n*, 744 S.W.2d 926, 928 (Tex. 1988); *Van Dyke*, 697 S.W.2d at 384-85 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. h (1982)). TUFTA provides remedies to creditors of debtors who make transfers that are fraudulent within the meaning of the statute. TEX. BUS. & COM. CODE §§ 24.001-24.013. Here, the FOFCOL include facts determined by the state court regarding how Cardwell and Appellants' pre-petition equity stripping scheme and the creation of North Ponderosa, LLC, met the definition of a fraudulent transfer under TUFTA. Thus, the FOFCOL at issue formed the basis of the state court's judgment on the TUFTA claims. Appellants' contention that fraud on the bankruptcy court was not an ultimate issue in the state court proceeding is irrelevant because the bankruptcy court did not apply collateral estoppel to the state court's findings that Cardwell and Appellants committed fraud on the bankruptcy court.

Third, the party against whom collateral is asserted must be a party, or in privity with a party, in the prior litigation, or otherwise someone whose interest was actually and adequately represented in prior litigation. *Sysco Food Servs., Inc.*, 890 S.W.2d at 802; *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990). Here, Appellants were among the defendants in the state court proceeding. In addition, the absence of the chapter 7 trustee in the state court proceeding is irrelevant because strict mutuality of the parties is not required. Only the party against whom collateral estoppel is asserted must have been a party or in privity with a party in the first action. *Petta*, 44 S.W.3d at 579; *Sysco Food Servs., Inc.*, 890 S.W.2d at 801; *Eagle Props., Ltd.*, 807 S.W.2d at 721; *Tenet Health Sys. Hosps. Dallas, Inc.*, 438 S.W.3d at 203.

Although Appellants argued that fraud on the bankruptcy court was not the same issue and was not actually litigated in the state court proceeding, Appellants failed to dispute the application of collateral estoppel to the state court's factual findings underlying the judgment on the TUFTA claims. Instead, Appellants focused on the finding of fraud itself, arguing that the bankruptcy court had to find fraud on the court by clear and convincing evidence, while the state court operated under a preponderance of the evidence standard. This conflates the standard of proof required to establish a claim or an element of a case with the admissibility of each piece of evidence that supports the fact finder's conclusion

The fact that a claim must be established by a particular standard of proof, whether it is by a preponderance of the evidence, clear and convincing evidence, or beyond a reasonable doubt, does not mean that admissibility of each piece of evidence is judged by that standard. "[I]ndividual pieces of evidence insufficient in themselves to prove a point may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts." *Huddleston v. United States*, 485 U.S. 681, 691, (1988) (citation omitted). Or, to paraphrase Dean McCormick, each

piece of evidence may be a brick, it need not be the entire wall. Kenneth S. Broun et al., 1 MCCORMICK ON EVIDENCE § 185 (7th ed. 2014).

All relevant evidence is admissible unless excluded by the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. FED. R. EVID. 402. Appellants point to no such barriers to any of the state court findings that the bankruptcy court did rely upon.

Evidence is "relevant," and therefore admissible if not otherwise barred by one of the subsections of Rule 402, if it has a tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. FED. R. EVID. 401. The bar to admissibility based on relevance has been described as "low." *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 809 (5th Cir. 2017).

The bankruptcy court did not err in determining that Appellants were collaterally estopped from relitigating FOFCOL ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 20, 22, 23, 25, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46 (excluding the finding of injustice), 47, 48, and 49 in connection with the motion to vacate.

**D.   The bankruptcy court did not err in granting Movants' motion for summary judgment to vacate the Sale Order.**

In order to establish fraud on the court to set aside a judgment pursuant to Rule 60(d)(3), a party must show "an unconscionable plan or scheme which is designed to improperly influence the court in its decision" by clear and convincing evidence. *Wooderts v. Warden*, 516 F. App'x 370, 372 (5th Cir. 2013); *see Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338-39 (5th Cir. 1978); *First Nat'l Bank of Louisville v. Lustig*, 832 F. Supp. 1058, 1062 (E.D. La. 1993), *aff'd*, 96 F.3d 1554 (5th Cir. 1996). Fraud on the court is distinguishable from fraud, misrepresentation, or misconduct under Rule 60(b)(3), and arises only from "the most egregious misconduct, such as

bribery of a judge or members of a jury, or fabrication by a party in which an attorney is implicated." *Rozier*, 573 F.2d at 1338 (quoting *United States v. Int'l Tel. & Tel. Corp.*, 349 F. Supp. 22, 29 (D. Conn. 1972), *aff'd sub nom. Nader v. U.S.*, 410 U.S. 919 (1973)); *see Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

"Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *Rozier*, 573 F.2d at 1338 (quoting *Int'l Tel. & Tel. Corp.*, 349 F. Supp. at 29). Fraud against a single litigant is not enough. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 668 (5th Cir. 1981) (citing *Hazel-Atlas Glass Co.*, 322 U.S. at 245-46). Furthermore, fraud on the court requires conduct that could not have been exposed within one year, per Rule 60(c), after the order or judgment was entered. *Jackson v. Thaler*, 348 F. App'x 29, 34-35 (5th Cir. 2009); *In re BNP Petroleum Corp.*, No. 09-20206, 2013 WL 5493125, at *5 (Bankr. S.D. Tex. Oct. 1, 2013), *aff'd sub nom. Black v. Schmidt*, No. 2:13-CV-322, 2015 WL 364293 (S.D. Tex. Jan. 27, 2015), *aff'd sub nom. In re BNP Petroleum Corp.*, 642 F. App'x 429 (5th Cir. 2016).

There was no dispute between the parties in their cross-motions and responses for summary judgment that the clear and convincing standard was necessary to establish fraud on the court. S*ee* Dkt. # 8-4, at 12 ¶ 3 (Motion filed in bankruptcy court by Appellants); Dkt. # 8-4, at 44 ¶ 1 (Response filed in bankruptcy court by Movants). The bankruptcy court specifically noted that agreement, observing that "[t]hey disagree about whether the standard is met in this particular case." *See* Dkt. # 1-4, at 8 ¶ 2 (Bankruptcy court's Memorandum Opinion). It is disingenuous for Appellants to now claim that the clear and convincing standard was not the basis upon which the issue was presented to the bankruptcy court or was not the standard that the bankruptcy court applied. The bankruptcy court's discussion of the law governing fraud on the court and its reason

for concluding that the facts supported a finding of fraud on the court, makes it clear that the court understood, and correctly applied, the very strict test for a claim of fraud on the court using the standard agreed to by the parties – clear and convincing evidence. *See* Dkt. #1-4, at 7-11 (Bankruptcy court's Memorandum Opinion, section headed "Conclusions.")

Consistent with the standard articulated by the parties, the bankruptcy court found that Cardwell and Appellants committed fraud on the court by clear and convincing evidence. This finding was based on both the state court's findings that were entitled to preclusive effect and the affirmative misstatements and misleading omissions of Appellants in their submissions to the bankruptcy court and in their dealings with the bankruptcy trustee and with the court itself. Dkt. # 1-4, at 6-11.

The bankruptcy court found that the state court's FOFCOL entitled to preclusive effect established:

- The $600,000 loan from Barbara Marshall, LP to Cardwell was not funded.

- On October 22, 2008, the date of the loan documents, the fair market value of the 94 acres securing the indebtedness was $200,000.

- Barbara Marshall was an elderly woman who lacked any knowledge of the purported loan from Barbara Marshall, LP to Cardwell.

- Mrs. Marshall relied upon the advice of her advisor, David McKinnon, in financial matters, including the creation and management of Barbara Marshall, LP as well as the purported loan from Barbara Marshall, LP to Cardwell.

- McKinnon was also Cardwell's financial advisor and friend.

- Prior to Cardwell's bankruptcy, McKinnon and Cardwell, together, hatched a scheme to protect Cardwell's non-exempt Melissa property from his creditors, especially Gurley. The first step of this scheme was to create the appearance of negative equity, which would cause a bankruptcy trustee to either abandon the property or sell it cheaply. The second step required Cardwell to file for bankruptcy with the specific intent of obtaining a discharge of his judgment debt to Gurley.

- Prior to Cardwell's bankruptcy, McKinnon prepared fraudulent loan documents to create an appearance of negative equity in the Melissa property. In addition, at some

- point, McKinnon created North Ponderosa as a shell for the sole purpose of purchasing the property from the bankruptcy trustee for a nominal sum.

- Barbara Marshall, LP and North Ponderosa were McKinnon's alter egos.

- The chapter 7 trustee was unaware of all of the connections between McKinnon, Cardwell, Barbara Marshall, LP and North Ponderosa when he filed a motion seeking to sell the 94 acres to North Ponderosa.

- McKinnon and Cardwell concealed the connections between McKinnon, Cardwell, Barbara Marshall, LP and North Ponderosa from the chapter 7 trustee and this Court.

Dkt. # 1-4, at 6 ¶ 19.

Based on these findings, the bankruptcy court concluded that Cardwell filed, under oath, false bankruptcy schedules in which he deliberately and affirmatively misrepresented that a legitimate lien in the amount of $600,000 existed on the Marshall Property in favor of Barbara Marshall, LP. Dkt. # 1-4, at 9 ¶ 6, 10 ¶ 7. Furthermore, Barbara Marshall, LP—*i.e.*, Appellants—filed a false proof of claim consistent with Cardwell's false bankruptcy schedules. Dkt. # 1-4, at 9 ¶ 6. Cardwell and Appellants' deliberate actions induced Moser to transfer title of the Marshall Property to North Ponderosa, LLC—*i.e.*, Appellants—and they used the bankruptcy court, which issued the Sale Order authorizing the sale, to perpetrate their scheme. Dkt. # 1-4, at 10 ¶ 11.

As the experienced bankruptcy judge pointed out, honesty in the context of bankruptcy is so important that bankruptcy fraud, concealing assets, and making false oaths and claims are punishable as crimes under 18 U.S.C. §§ 152, 157. "Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of [a debtor's] disclosure duty cannot be overemphasized." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999). "[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Id.* (quoting *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)); *accord Love v. Tyson Foods*, 677 F.3d 258, 261 (5th Cir. 2012). The volume of cases handled by our bankruptcy

courts, and the speed at which motion and case dispositions are made, require scrupulous adherence to disclosure requirements and the Bankruptcy Rules or the system will become bogged down in the discovery wars, motion practice, and gamesmanship that plague district courts.

Cardwell and Appellants did not merely fail to disclose pertinent facts; their conduct undermined the integrity of the bankruptcy process and constituted "an unconscionable plan or scheme which [was] designed to improperly influence the court" to issue the Sale Order. *See Addington*, 650 F.2d at 668; *Rozier*, 573 F.2d at 1338-39. Bankruptcy courts and trustees lack the resources to scrutinize every statement and schedule submitted to the bankruptcy court. Here, the bankruptcy court relied on disclosures from Cardwell and Appellants when it issued the Sale Order. Appellants' contend that simply questioning Cardwell within a year after entry of the Sale Order would have revealed the way they used the court as part of their fraudulent scheme. This mocks the duties of candor and full disclosure owed to the court. Just why would either the bankruptcy court or the trustee have had that discussion with Cardwell within a year of the Sale Order?

Appellants argued that the bankruptcy court erroneously stated that the $600,000 loan from Barbara Marshall, LP, to Cardwell was not funded. The state court found that Cardwell and McKinnon—a certified public accountant who was representing both Barbara Marshall, LP, and Cardwell in the loan transaction—were unable to substantiate the source of the funds in the transaction. FOFCOL ¶¶ 12-13. Because collateral estoppel applied and the evidence attached to Appellants' motion for summary judgment did not contradict the state court findings, the bankruptcy court's statement was not erroneous.[4] Appellants' attacks on the state court's findings

---

[4] "In determining which issues have been actually litigated, the federal court is 'free to go beyond the judgment . . . and may examine the pleadings and the evidence in the prior action.'" *Santopadre v. Pelican Homestead & Sav. Ass'n*, 937 F.2d 268, 273 (5th Cir. 1991) (quoting *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 n.7 (5th Cir. 1971)). In proceedings regarding the First Order, however, Appellants did not direct the bankruptcy

did not raise genuine issues of material fact. The court finds no error in the bankruptcy court's grant of summary judgment in favor of Movants.

## V.  CONCLUSION

The bankruptcy court did not err regarding its determinations that:

(1) Movants had standing to seek relief from the Sale Order;

(2) Movants were not required to file an adversary proceeding;

(3) Appellants were collaterally estopped from relitigating FOFCOL ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 20, 22, 23, 25, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46 (excluding the finding of injustice), 47, 48, and 49 in connection with the motion to vacate; and

(4) Cardwell and Appellants committed fraud on the bankruptcy court.

Accordingly, the bankruptcy court's Order on Bifurcated Issues Related to Motion to Vacate the Order Granting Trustee's Motion for Authority to Sell Property of the Estate and to Pay Certain Taxes and the Order Regarding Motions for Summary Judgment are AFFIRMED.

So **ORDERED** and **SIGNED** September 30, 2018.

_____
Ron Clark, Senior District Judge

---

court's attention to any evidence in the state court record that indicated that the FOFCOL at issue were clearly erroneous. *See* Dkt. # 8-5, at 11-13.